2-E-C-0479 Mr. Johnson, Special Administrator of the State of Newark, Tomorrow, Price, Mines & Seas, Plenty of Help. The Highland Elementary School and the School District of U-46, Feminist Athlete. Arguing on behalf of the plaintiff's appellant, Mr. William T. Gibbs. Arguing on behalf of the feminist athlete, Ms. Karen A. Wall. Thank you. Mr. Gibbs. May it please the Court. Counsel. We are here today seeking reinstatement of Misty Johnson's wrongful death case against the school district where her son, Marcus, attended fifth grade. His wrongful death is a tragic case. It's particularly tragic because it occurred in a school setting, a place where Misty sent her young child to be safe, to be cared for, to be looked after. And unfortunately, this young man never came home. She seeks reversal of the trial court's dismissal of her case. The trial court dismissed based on the Tort Immunity Act. I submit to you that the trial court's interpretation of the provisions of the Tort Immunity Act were overreaching and overexpansive and do not comport with precedent in this state. And certainly it's not the type of conduct that our legislature intended to immunize. The de novo review of this dismissal on the pleadings will reveal that numerous genuine issues of material fact exist. Namely, what exactly happened in this unsupervised classroom where Marcus was left to play a rough physical game with his classmates? Where is that? How do you derive that evidence? Where is that in the complaint that he was playing a rough physical game? That is in paragraph 12 of the complaint. The second amended complaint? Yes. Because on the first amended complaint, something else was alleged, correct? Yes. Okay. Go ahead. It's at paragraph 12, which is at C-88, also seen in the appendix at 3, which reads, At that time and place during the unsupervised rough physical activity, Marcus collapsed, hitting his head when he fell and experienced seizure activity on the ground. Because this case was dismissed on the pleadings, that is what we know at this stage of the game. Was there anything that would have precluded you from doing some discovery, some affidavits, anything to that effect, in order to come up with some more information as to what exactly happened in that classroom? The district did provide us with some limited discovery that consisted of incident reports of the occurrence. And I don't think there's any dispute that those reports demonstrate that Marcus was in a classroom playing some kind of game with other students and that there were no school personnel present when he fell. Are there any allegations that the child was unresponsive for an extended period of time before 911 was called or that there was a needless delay in the part of the school? Is there any allegation to that or is that where this unknown factor comes in? That is the allegation, is that he lay unresponsive for an unknown period of time. Does it have to be pled more specifically than that under the case law? No, because it's impossible to do so. The school district doesn't get the benefit of having a case dismissed because they weren't watching Marcus and they don't have the school personnel there to see what happened. How about the kids? The kids have never been deposed. They're minors, obviously. That brings all sorts of delicate issues into the case. And they should be. And these children must. Must. Counsel, am I correct? The complaint does not allege that the defendants failed to act once they learned of the decedent's collapse. Is that correct? There are basically two. So then it's in the complaint. There's two groups of allegations in the complaint. Number one, that Marcus was in this room unsupervised when this happened. And that that lack of supervision by the school was willful and wanton in light of the fact that they were aware that Marcus had seized on six prior occasions at the school. They were told by the mother that he had a seizure disorder. They were told by the mother that he had an asthma disorder. And to leave him unattended playing this game with only other students to watch him is acting with an utter indifference to his safety. That lack of care resulted in a delay of the school knowing, even knowing, that he had collapsed. So that's sort of one portion of the case. Before we leave this point, let me ask a question to clarify. You're aware of the fact that the case was well settled. Teachers' mere act of leaving students unsupervised without more would not be sufficient to establish willful and wanton. But you're saying the facts here are different. The school was on notice of this problem prior to the dating question. Is that what you're saying? Absolutely. But how about the Jackson case? Yeah, the Jackson case says leaving a student unsupervised, in and of itself, without any other facts, is not willful and wanton. Yeah. But the Wilson case says, based on assumptions and speculation, that just because you have a student who was handicapped, mentally handicapped, that you can't leave them because something's going to happen. It's all foreseeability. Yes. It really is all foreseeability, and we go back to torts 101 on the duty, which is if you have facts that make it foreseeable that something bad is going to happen to a given student, you may have a different duty than the Jackson court speaks to, which is just mere leaving a child, an unknown, unidentified child, is not necessarily willful and wanton. However, all the cases say that when it is foreseeable that something bad may happen to a student, i.e., you know that he has an asthma condition, you know that he's had seizures in school on six prior occasions, then you're on notice of leaving him alone can lead to bad outcomes. And that would be tantamount, you're saying, to utter indifference. Correct. Correct. And that's the Stewart case where a young man, that's a Supreme Court case from Illinois, where a young man has an asthma attack in school, and the school has a period of time between seven and 20 minutes. And this is a jury case, by the way, I should say. This is not a dismissal on the pleading, but Stewart is a jury case, a jury verdict, in which that lack of response, to go back to Justice Bridges' question, that lack of response may amount to willful and wanton. Here what we know, I'm sorry. I was just going to say, your complaint is essentially grounded on the decedent suffering from some patent medical condition, because you described it. But do you – are there any allegations that the school personnel were aware of a time when the decedent suffered from both an asthma and seizure attack? On prior occasions? Yes. No. Is there any – I mean at the same time, where they suffered. I understand your question. The answer is no. Was there any testimony or anything in the evidence that showed that the physical activity, or he had physical activity in the past, normally triggered an epileptic episode or an asthmatic episode? The evidence, quote-unquote evidence, does not exist because we're only at the pleading stage. The allegation is merely that this – that he did suffer this during an unsupervised rough physical activity. Yes, sir. Yes. Yes. Counsel, you heard the Supreme Court's decision in the case of Abruzzo versus City of Park Ridge, correct? Yes. How is this case distinguishable from that? Abruzzo really – the Supreme Court opinion, actually, if you read it closely, is really just saying that the EMS Act trumps this provision of the Tory Immunity Act. And so the Supreme Court opinion in Abruzzo really doesn't help anything. In Abruzzo, what we know is that the paramedics are called at 1.06, I think, a.m. They come to the house, they find the door is locked, and they don't try to enter the home. They don't turn the knob. And then are called again at about 7 o'clock, and by that time, this child is four of them. And so Abruzzo really says that – and actually, the best I can cite to you on Abruzzo is Justice Jorgensen. First, obviously, the court held that the EMS Act provision trumps the Tory Immunity Act. Sorry, I thought I had it right here. But basically, what she says is that in Abruzzo – here it is – in a case called Swanson, which is an unpublished opinion Justice Shostak is familiar with from 2018, we agree with the plaintiff that the defendant's cases are distinguishable and that this case is more similar to Grant, which distinguished the failure to implement a policy, to do what their policy requires them to do, parentheses, community provisions inapplicable, from a failure to diagnose or examine, parentheses, provisions apply. The plaintiff in Abruzzo alleged a failure to examine, and those claims clearly fall within the Tory Immunity Act. So it's the negligent medical care versus no medical care at all. Correct. Correct. Correct. And so to go back to Justice Bridges' question from before, there are pre-collapse allegations and there are post-collapse allegations. And the allegations are that post-collapse, these teachers and administrators in the school were trained that they must – and this is right in the training and right in the complaint – that if an employee encounters a child who is not breathing, they have to – it's a policy, it's a protocol, it's a procedure – that they must take immediate life-saving action without consulting with a supervisor. Our allegation is that here, once confronted with this downed student, nothing was done for this young man. Well, they obviously made some sort of medical exam or medical determination in order to do nothing and call 9-1-1, right? All we know is that 9-1-1 was called. Right. Right. That's all we know. But doesn't the case law take the position that they're not required, Tory Immunity, to perform some kind of an examination? What the case law says is that if this young man is taken to the nurse's office and the nurse does an examination and then says, I think you're okay to keep playing, Marcus, and he goes back and she didn't recognize something, that's a medical negligence case, essentially. And what the immunity says is, you're immunized from that. We don't want schools being on the hook for medical malpractice cases, essentially, from where a school nurse examines. And that's the Grandolski case. Grandolski is the case at Lyons Township High School where the student falls, taken to the nurse's office, the nurse does a full examination of that student, I think even takes vitals, and says you're okay. Later on she's taken to the hospital and it's discovered that she has a fracture, a cervical fracture. And that's exactly what the legislature intended to immunize. Those types of cases where a student is evaluated or examined or a school nurse is presented with something and decides I don't need to examine that student. But isn't your complaint then requiring them to make some kind of an examination of this young man when they come into the room? Our complaint is just like the allegations in Stewart. And we modeled it after Stewart and Grant, which is you already have a plan in place. Follow your plan. Was this argued below? Yes. Yes, and what happened, just so Your Honor is aware, the case was dismissed originally. We were granted leave to amend the complaint, and then the second amended complaint was dismissed. But this was in the second amendment, this allegation, a failure to follow the protocol. Yes, yes. And that's seen especially at paragraph the training is at paragraph 9. The promises that the school district made are at paragraph 8, the first aid would be provided to students who are injured during school hours. Mr. Gibbs, I'm sorry. You're submitting then that if we find or if the court finds that the promised protocols were not followed, then immunity does not apply. Correct. It's just like Stewart. I mean, it's just like, sorry, now I've misspoke. It's just like the unpublished opinion of Swanson. I'm sorry. I said Stewart, but I meant Swanson. And Swanson says that was a case where a gymnast had a number of falls while performing gymnastics. It was a concussion. And there were three or four, if I may finish my thought, there were three or four times that she fell. There was some dispute as to whether or not the athletic trainer and or the gymnastics coach recognized that those falls may have been head injuries. Eventually, a fourth concussion happens and she suffers some rather significant memory loss. And basically that case said our allegation is not that the trainer or the coach failed to make an examination on those three prior falls. It's that they failed to follow the concussion protocol. Failed to follow their plans that were already in place. And that type of thing is not immunized. So your argument is the unsupervision, unsupervised, and the failure to follow protocol. Correct. Anything else? I mean, when you started here, you said there are two things. Yep. Those are the two things. The only thing I would add is that this procedure is important. Procedure is important. And it is important to this family that procedure is allowed to play out, to allow discovery, to allow for this case to proceed. And most of these cases say Wilkman wants to conduct whether something rises to that or not is a true issue of fact. It can be determined as an issue of law on some instances, but there needs to be some evidence. And here we simply are at a stage where we don't have evidence. I know you're trying to wrap it up, but in your second amendment complaint, if we look at the issue of the school district failing to follow the protocol, what is it that your complaint wanted the school district to do other than what they did, which is alleged here, which is called 9-1-1? So paragraph C, subparagraph C of paragraph 17, is that they failed to provide, quote, and this is because this is what their training said, immediate life-saving action, and then communicate the presence of that threat and request for information and assistance quickly, despite specific training that required them to do so in the event of a medical emergency. And my question to you is wouldn't that then require them to do some examination or diagnosis of what he was actually suffering from at the time? Well, this is so obvious that this young man is fighting for his life, and actually in a different setting it's said by the second district as well. It's rather obvious that when someone is on the ground grasping for breath, struggling for their life, there is a clear medical emergency. And so you must do something to allow a fifth-grade student to simply die without doing anything at all is not what these cases want to happen in schools. So just to clarify, I think what Justice Bridges is asking is if they went in and gave some life-saving, they're making a medical decision, thus they're immune under, what is it, 106? Yeah, 6105. But you're saying, well, we're looking at it like they're going in under the protocol, thus no immunity. Yes, and let's just say, Justice Bridges' hypothetical plays out, and that a teacher tends to Marcus, and I'm making this up on the fly, as you can tell, but determines that this is a concussion and not any kind of respiratory issue. This is a head injury that will clear. Well, no, let's leave it to the facts here. So the issue would be, is this a seizure or is this an asthma attack? Not concussion, but the case before us, that would have been the matters the school district would be contemplating as far as a diagnosis. So what I'm trying to say, and maybe I'm saying it wrong, is we allege that their training and their procedure mandates that they perform first aid. So your C is under that protocol. It's C as well as H and K. And what I'm saying is, if the allegation or the facts demonstrate that they did perform first aid, but they negligently administered first aid, the negligent administration of first aid could walk right into the immunity because now it's Grandolski. Now you have a student in the school nurse's office and you're just alleging that that nurse didn't do it right. How this case is different is that they don't even do the first aid. They don't even give them a chance. Pursuant to the protocol. Pursuant to what they're mandated to do and their training requires them to do. And that's how it's different. Okay. Anything further? Thank you, sir. You'll have an opportunity on rebuttal. Thank you. Ms. Walsh. Good morning. As it may please the Court, counsel, plaintiff's assertion that a claim should not have been dismissed at the circuit court stage has no basis in the law because it is barred under Section 605 of the Tort Immunity Act. What about this protocol? Let me just jump in and ask you about that. You allege that they had a specific protocol that they were mandated to follow which required them to administer some type of medical attention. He's alleged that they didn't follow that. So where does that leave this complaint then? That's true. So plaintiff's focus on the district's failure to follow the promise to take immediate life-saving action or to follow a training that was given by a third party that was neither specific to Marcus or the treatment of asthma or epilepsy as a matter of law does not create a legal duty upon which liability can be imposed. Why would it have to be specific to Marcus? Don't they have to follow a protocol? Don't they just decide to disregard it in a given case? We're saying internal policies do not create a legal basis upon which liability can attach. And the cases we cite in our case, the Floyds case, the Rhodes case, which is an Illinois Supreme Court case, and the Hillefra case, they all make clear that internal policies do not create a legal duty upon which liability can be imposed. I'd also like to argue that calling 911 is taking life-saving action in this case. How long did the child lie unresponsive, do you know? So the time period as alleged that he laid unresponsive when he was being unsupervised is unknown. However, what is alleged is that once they did discover Marcus, they called 911 immediately upon finding him. And then during that seven-minute time period that it took the ambulance to arrive, they either failed to recognize through their assessment of him that he was also having trouble breathing or they voluntarily chose not to utilize this entailer or perform CPR because under CDC regulations you're not supposed to put anything in the mouth of a student who's having a seizure. So basically they called 911 immediately upon finding Marcus. And this is alleged in the complaint and also reinforced in plaintiff's brief and the assertions that he makes. They allege that the child laid there for an unknown period of time, correct? Correct. So obviously taking a reason unknown is not sufficient. Correct. So under plaintiff's assertion, in terms of the supervision component of this, he's trying to assert a heightened duty on the district to supervise Marcus. And our argument is that there is no such heightened duty under the law. You're saying even if the school knows that a child is prone to some type of medical condition, it doesn't impose any greater duty on them? Correct. And that it's not for a number of reasons. One, plaintiff does not include any sort of legal argument to support that assertion. Secondly, this argument has been explicitly rejected by the Illinois courts in the Jackson case, in the Marshall case, and in the Downey case. They all found that there is no heightened duty to supervise a student with a mental handicap in one case, a predisposition to depression, to which he was on suicidal watch in another case, and another one where the child had autism. Additionally, from a public policy standpoint, imposing a heightened duty on the school district for every student that has an IEP or has a health condition is simply untenable. And this is particularly true in the fact that U46 has approximately 40,000 students in their district. What about if the school specifically said they would keep an eye on a student, a given student? Would that make a difference? Specifically said that they would... Keep an eye on a student, let's say, a given student who has a medical condition. Well, one, that's not alleged in this case. And two, it would go back to the argument that an internal policy or a promise does not create a legal duty upon which liability can attach. So you're saying the fact that these protocols were in place, his argument is irrelevant to the legal decision? Correct. His argument is that there should be a heightened duty because they were aware that Marcus had asthma and they were aware that Marcus had six seizures before that incident occurred. One, looking at the fact that he had six seizures in six years that he had been attending that school is not all that frequent. Two, there just isn't any heightened duty. It reverts back to the fact that a teacher cannot supervise every student in the classroom at all times during the school. There are a number of cases that say that simply not supervising school activities does not rise to the level of Willful Unwanted Conduct. This is, again, in the Jackson case, the Albers case, the Hopstaffel case. Plaintiff has failed to distinguish from those cases. There is also no factual support alleged in the complaint to support it. He has not alleged that Marcus had an increased amount of seizures or asthma attacks during recess, that Marcus had shown early signs that he was about to have a seizure, that he had previously had asthma or seizure complications before. But didn't you just say that those allegations, there's no heightened duty rule? There is no heightened duty. But even if, one, there is no heightened duty, but two, he has failed to state a claim because he hasn't even made enough allegations to support that argument. Had he made those allegations, would that have created a heightened duty? No, absolutely not. You said you would ignore the protocol saying there is no legal commitment or no legal ramifications as a result of not following the protocol. How about the Second District case that Mr. Gibbs mentioned on the concussion protocol that says that they failed to follow? The Swanson case? Yes. So the Swanson case is distinguishable because in that case, the coach or the teacher or instructor had seen the student fall on her head a number of times. She had also complained of nausea and headaches a number of times. But he still chose not to take any sort of preventative action to have her get an assessment, to have her sit out. And that's why the protocol really became an issue in that case. That's not the situation here. But the situation here is different, certainly. But you have two protocols that tell you how to react in a certain situation. In Swanson, you had a way to react through the protocol if there was a perceived concussion. In this case, there was a protocol on how to react with respect to lifesaving. How is it any different that there's no legal liability with respect to a protocol? When there wasn't Swanson, why wouldn't there be here? I think the Swanson case was more focusing on the fact whether or not Section 6105 would apply in that case as opposed to whether a legal duty was created. But in that case, it was a failure to follow the protocol, was it not? It was one component which rose to the level of willful or wanton conduct. And I want to point out that the Swanson case also recommended or included a failure to follow a protocol, but it stated that that wasn't a requirement, that that was just one consideration taken into fact of a number of other considerations that rose to the level of willful or wanton conduct. Thank you. So, again, the root of this action comes down to whether the district should be held liable for calling 911 immediately upon discovering Marcus, or during that seven-minute time period, either failing to recognize through their assessment that he was having trouble breathing or choosing not to utilize this inhaler. Under either scenario, the district should be immunized under Section 6105. The purpose is to provide immunity to school personnel who fail to examine or inadequately examine a student and consequently fail to diagnose or provide the appropriate medical response. Is it only limited to those circumstances? What if the child was laying on the floor for 15 minutes before anybody called 911 and they knew about it? Would they still be immunized from that action? If they had assessed that student and then decided through their assessment that additional action wasn't necessary, then yes. Because they're not medical personnel. They can't determine as a doctor can what's actually going on in that situation. So that gives them immunity. So that would provide them with immunity. And I want to point out, you mentioned the Abruzzo case, and contrary to plaintiff's assertion, that case did find that the failure to provide assistance was immunized. Though it ultimately found that the EMS act applied because it was more narrow, it did state that the tort immunities would apply. And the Payne v. Johnson case relied on that and also found that the failure to provide any assistance to the plaintiff was derived in a failure to evaluate or assess him and was immunized under Section 6105. I think that was the linkage or Phase 2. Yes. Counsel, in your brief, you say the decedent was having an asthma attack simultaneously with his seizure and that the asthma attack was a latent condition. And that's what you raise in your brief. My question is, were those facts in the complaint or in an affidavit or evidence that was submitted in your 2-619 motion? There was no evidence, or there was no affidavit that was submitted. They were based on inferences from plaintiff's complaint and in response to his arguments that Marcus was having an asthma attack. And their failure to utilize his inhaler or perform CPR was really what was the willful and wanton conduct in that situation. So they were in response to that. And on that note, I want to point out that the Stewart case also states that the failure to treat or consider asthma in and of itself is not willful and wanton conduct. And the circuit court relied on this precedent to determine that the failure to utilize Marcus' inhaler during the situation or perform CPR was not willful and wanton conduct. So speaking more to the Stewart case, why the court found that that was predominantly willful and wanton was because the teacher there sat idly with the student for 7 to 20 minutes after discovering that the student was having an asthma attack. They didn't call 9-1-1. And then still failed to take any action to call 9-1-1. And that was not the case here. As alleged in the second amended complaint, the district did exactly what the Stewart court felt was appropriate. They timely secured medical assistance by calling 9-1-1 upon discovering Marcus. So in Stewart, I think there was a – I think I might have been on that case too. But I think that was an utter indifference or a conscious disregard is what was found in that case. Correct. Because they were running all over trying to figure out what the protocol was to who was going to call 9-1-1. Right. Under our motion to dismiss, we allege it under Section 2619 for the tort immunity provision because 6105 provides absolute immunity. We also argue that he failed to state a claim for willful and wanton, and therefore it should be dismissed under Section 26115. But under the protocol that he raises akin to this case, the case of the statement, you know, Swanson, the immunity doesn't apply. Correct? Correct. I don't have the Swanson case in front of me. I don't recall how extensive they argued Section 26105 or if they did argue it. But, again, that case was over a time period where the student was showing symptoms of having a concussion and had disclosed that to the teacher, and then the teacher then still did not take any sort of action to conduct an assessment or evaluation on the student. That's not the case here. Marcus couldn't tell him what condition he was in, and the school had to evaluate him to figure out what was causing the collapse, whether he was simply having a seizure, whether he was having trouble breathing, et cetera. And they took action by calling 9-1-1 immediately upon finding him. So let's see if there's anything else. I also want to point out, because Plaintiff mentioned Grant, too, in that case there was no assessment or examination of the student. Rather, it was based on the district's reaction to what the student's declaration was, that he was going to commit suicide. So the focus was what the district did or failed to do with that information. Again, this is distinguishable because here Marcus couldn't tell them what was going on, so they had to examine him and assess him to determine what to do next. In terms of the Wolf and Wand component of that, I also want to point out that the Grant court dismissed their Wolf and Wand claim because they found that the district didn't act with conscious disregard or other indifference for the student's safety because it took some action, even though that action that they took was ultimately found to be insufficient. And, Counsel, again, excuse me for interrupting you, but while the case law is clear that a teacher's mere act of leaving a student unsupervised for a period of time isn't in and of itself enough to establish Wolf and Wand conduct, here we do know that the school district is aware that the decedent has had at least six previous seizures, correct? Six previous seizures within that entire time period that he was at school. And you said that's a six-year period. Six-year time period. The standard by which you have to find that is whether the facts support the failure to supervise Marcus pose a high probability of serious harm, of serious physical harm. Simply having asthma or simply having epilepsy does not pose a high probability of serious harm. There are a number of kids that have IEPs or conditions. It's simply intenable to require the school district to have one-on-one supervision with all of those students at every step of the way. That's exactly why the supervision immunity is in place, because teachers cannot observe and see and supervise all children at all times during the school day. So if I may finish my point. Go ahead. It's tragic what happened to Marcus. There's no one denying that. But the district isn't to blame in this situation.  And that's the standard that we're judging this by today. Additionally, the district's response to the emergent condition was pursuant to their examination and assessment of Marcus. And it should be fully immunized under Section 6105 of the Tort Immunity Act. For these reasons and what's argued in our briefs and in the trial court's opinion, we request that you affirm the trial court's granting of the district's motion to dismiss pursuant to Section 2, 615, and 2619. Thank you. Thank you so much. Before you start, if I could ask you a question. Because in your brief on page 9, you state, and I quote, Marcus' obvious medical condition required no medical examination, just immediate reaction as promised. And my question to you is what specific immediate reaction did you identify in your complaint was lacking here? First aid. And when a teacher or administrator encounters someone who is not breathing, you must take immediate life-saving action. That's what they were trained to do. You said first aid and immediate. Tell me what specific first aid reaction were you, you know, that you were raising in your complaint that they should have taken? Well, it depends on how the facts unfolded. But CPR, tongue depressant, inhaler usage, turning him over, ensuring that he's not collapsing his airway, all of those things would be rather simple responses to a young child. They don't require an examination. You just immediately do that response. That's what they're trained to do. Counsel, let me ask you this. In your arguments, your opening argument, you emphasized the fact that the school did not follow their own internal protocols and procedures for dealing with the medical emergencies that they had in place. The opposing counsel says failure to file internal protocols in place does not give rise, seems to be saying does not give rise to a legal obligation or liability. How do you respond to that argument? Well, I think what she said was it doesn't create a duty. But it's rather clear, I mean, the Illinois Supreme Court in Stewart said, and I quote at paragraph 103, the failure to adequately respond to a known danger may constitute utter indifference and conscious disregard. So you're saying the failure to follow the protocol would fall within the ambit of that proposition? Well, it's, yes, I'm not sure I quite understand your question, but if we advance this case to trial in front of a jury, their failure to follow their protocol may be evidence in support of a jury's finding, pursuant to a 6-0-1 instruction. But it's a school's duty to care for the children in its charge. And so I'm not sure I quite understand this notion of heightened duty. The Jackson Court, which we talked about before, says it real specifically. A teacher's mere act of leaving children unsupervised will not be sufficient to establish willful and want conduct. Rather, a plaintiff must show that the teacher or school was aware or should have known that the absence of supervision posed a high probability of serious harm or unreasonable risk of harm. And a jury in this case, listening to this evidence, knowing what Marcus had been through on prior occasions at the school, what the mother had told the school, would find that his conditions and leaving him alone in a classroom with other fifth-grade students to play some rough game of tag where he was being pushed and bounced around and falls and hits his head, that that is willful and want conduct. That's acting as an utter indifference and a conscious disregard for his safety. We mentioned the Stewart case as well. And the Stewart case says things like failing to administer epinephrine in direct opposition to their standard operating procedures, that if a young child is having some kind of allergic reaction, that type of thing is so simple that it's not the type of thing that is supposed to be immunized under this provision of the Tort Immunity Act. And I think counsel... Well, didn't Stewart say that the failure to use the inhaler was not willful and want and was not in itself willful and want? And that Stewart case was a lot more the timing calling than willful and want. Stewart basically said there's three factors. If you deviate from your standard operating procedures or policies, if there is an unjustifiably long response time or an unjustifiably inadequate response to a known danger, those are the factors, do not represent requirements, but factors, in determining willful and want conduct. And here we have all three. We have the violation of their policies to respond immediately if someone needs first aid and to perform life-saving action. They admittedly did not do that. We have at least seven minutes, but we know it's longer than seven. How do we know that? Because we know that the time that 911 was called, I have the times in my brief, and the time that the paramedics arrived and the paramedics note in their report no life-saving provisions were administered. Well, that's seven minutes right there. That's seven minutes. So we know it's at least seven. At least. And we know that Marcus was down for a period of time prior to even being discovered because we know that someone had to somehow notify the teachers and or administrators who weren't in the room. Those teachers or administrators had to understand what the notification was, had to move down to the classroom, so that we know that there is a period of time, and it's in excess of seven minutes that he laid down. Did you say that in your complaint, or did you say it was unknown? We said at least seven minutes passed. And the amount of time in addition to the seven minutes is unknown. And I think counsel's argument really demonstrates where I started, which is there are a lot of questions of that. And counsel testifies that a number of children have asthma and or seizure disorders, that it's her opinion that this young man this day was suffering an asthma attack on top of a seizure disorder, that those six seizures had happened over six years, that whoever responded must have made some kind of decision on how to respond, whether to administer first aid or whether just to call 911. Those are questions of fact. We don't know that based upon the pleadings before this court. This is a complaint of law that states a cause of action, and that cause of action must proceed according to all of the precedent in this court and in courts across the state so that when the evidence supports these allegations, a jury can decide whether calling 911 was a sufficient life-saving determination or life-saving action pursuant to their policies. Maybe I'm wrong, and maybe at the end of the day a jury says that's all that was required, was that they called 911, but that's a question of fact. That is a question of fact that a jury must hear after hearing all the evidence, what this school knew, how they were trained to respond to emergencies, what they could or should have done in this instance, what the other students observed, what was happening to Marcus. And a jury, in my opinion, will find in favor of the plaintiff and determine that letting this child lay there for this amount of time and die on their watch, that calling 911 alone was not sufficient to satisfy their policies and procedures, that they must institute sufficient life-saving action in the face of a known danger. I thank you very much for your time. Thank you, sir, for your time, and thank you for your time. Thanks for coming in. We appreciate your arguments here today. We always enjoy hearing oral arguments here in a second, and we appreciate the courtesies that you've paid to each other and the professionalism and the quality of your briefs. We will take this case under consideration. We will render a decision in due course. Court is adjourned for the day.